UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL BECHTOL,

                Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, a foreign corporation; and THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, a foreign corporation,

                Defendants.

No. C05-1243Z

ORDER

## BACKGROUND

This matter comes before the Court on Plaintiff's Motion re: Choice of Law of Punitive Damages, docket no. 116. Plaintiff Michael Bechtol ("Bechtol"), a citizen and resident of Washington, seeks an order that Florida's bad faith insurance law, which provides for punitive damages, should apply in this case on the issue of punitive damages. Defendants Metropolitan Life Insurance Company ("MetLife"), a New York corporation, and Lincoln National Life Insurance Company ("Lincoln"), an Indiana corporation, both do business in Washington. Compl., docket no. 1, at ¶¶ 2, 3. Mr. Bechtol purchased a disability income policy from Lincoln in 1994. Id. at ¶ 1. The application for the policy was signed in Washington. Marisseau Decl., docket no. 132, at 5. Mr. Bechtol underwent an examination

ORDER -1-

for the policy in Washington, and the policy was delivered in Washington. Id. In 1999, Lincoln transferred all obligation under the policy to MetLife.

Mr. Bechtol was employed as West-Coast Regional Manager for Guy Carpenter & Company through June 2002, when he retired. Id. at 5-6. Shortly before his retirement, on May 16, 2002, Mr. Bechtol wrote to MetLife to cancel his policy because he was retiring. Id. at 6.

Mr. Bechtol learned of his diagnosis of Parkinson's Disease in December 2002. Id. In January 2003, he wrote to MetLife to make a claim for benefits. Id. at 36 (Bechtol Letter). MetLife's individual disability claims office, located in Tampa, Florida, directed the investigation of Mr. Bechtol's claim. See McCabe Decl., docket no. 72, at ¶¶ 2-3. During its investigation of the claim, MetLife communicated with Mr. Bechtol in Washington, as well as with his treating physicians. Marisseau Decl., docket no. 132, at 37-38. MetLife's field investigator met with Mr. Bechtol and his former employer in Washington. Id. at 39-48. In May 2005, MetLife denied Bechtol's claim by letter. Id. at 49-52.

In this case, Plaintiff sues MetLife and Loncoln for breach of contract and for insurance bad faith in the handling of his disability insurance claim.

## DISCUSSION

Mr. Bechtol contends that Florida law is controlling on the issue of punitive damages on his claim for insurance bad faith. Defendants MetLife and Lincoln counter that Washington law should apply. The parties agree that Washington law and Florida law conflict on the question of punitive damages, and that the Court must apply Washington's choice of law rules to determine which state's law controls the question of punitive damages.

### A. Choice of Law

A federal court sitting in diversity applies the choice-of-law principles of the court's forum state. The parties agree that Washington's "most significant relationship" test as set forth in Restatement (Second) of Conflict of Laws § 145 (1971) applies. See Barr v.

Interbay Citizens Bank of Tampa, 96 Wash. 2d 692, 697 (1981); Kammerer v. Western Gear Corp., 96 Wash. 2d 416, 422 (1981).

The parties disagree over whether the "most significant relationship" test favors application of Washington or Florida law. Under Washington law, the applicable law is determined by weighing four factors:

(1) the place where injury occurred;
(2) the place where the conduct causing the injury occurred;
(3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and
(4) the place where the relationship, if any, between the parties is centered.

Rice v. Dow Chemical Co., 124 Wash. 2d 205, 215 (1994). The Plaintiff urges that it is improper to simply "count contacts." MetLife responds that while it may be appropriate to focus on a single important factor, it is also important to consider all of the relevant factors of the Restatement test together.

Mr. Bechtol does not dispute that the first factor, the place where injury occurred, favors Washington law. Mr. Bechtol's "injury" is monetary and occurred in Washington. Mr. Bechtol resided in Washington when he made his claim, and he was a Washington resident during the investigation and when he received the denial of his claim. This factor favors Washington law.

The parties dispute whether the second factor, the place where the injury-causing conduct occurred, favors Florida law. Mr. Bechtol urges that Washington law places more emphasis on the second factor, the location where the misconduct occurred, when considering choice-of-law for punitive damages. See, e.g., Kammerer v. Western Gear Corp., 96 Wash. 2d 416 (1981) ("[w]here the most significant relationships were in California and where the conduct and acts as to the fraud and misrepresentation were accomplished in California[,] that state has a specific interest to be furthered.") The parties generally agree that many of the decisions and claims handling activities were performed in

ORDER  -3-

Florida, and that MetLife's individual disability claims department is located in Florida. Mr. Bechtol contends that MetLife's handling of his claim fell below industry standard and constituted insurance bad faith. Because many of the activities surrounding the handling of his claim occurred in Florida, Mr. Bechtol urges that Flordia has a strong interest in deterring improper insurance practices and that Florida law should apply. MetLife counters that the only part of its conduct to occur in Florida was claim evaluation. MetLife notes that its investigation took place, at least in part, in Washington state. Metlife interviewed Mr. Bechtol and his employer in Washington as part of its investigation. Marisseau Decl., docket no. 132, at 39-48. Although MetLife's claims department is based in Florida, its investigation involved numerous contacts with Washington, as well as activities within Washington. Id.; see also McCabe Decl., docket no. 72, at ¶¶ 2-3. The Court concludes that this factor does not weigh strongly in favor of either state, because MetLife's claims investigation involved substantial activities in both Washington and Florida.

The parties dispute whether the third factor, the domicile, residence, nationality, place of incorporation, and place of business of the parties, favors the application of Washington law. Mr. Bechtol is a Washington resident. MetLife is a New York corporation with its principal place of business in New York, and Lincoln is an Indiana corporation with its principle place of business in Fort Wayne, Indiana. No party is a resident of or domiciled in Florida. However, Mr. Bechtol urges that MetLife chose Florida as its "place of business," and therefore Florida law should apply. MetLife counters that Mr. Bechtol is a Washington resident, and that MetLife is a New York corporation licensed to do business in Washington. MetLife notes that Mr. Bechtol purchased the policy, canceled the policy, submitted his claim, and communicated with MetLife, all while a Washington resident. MetLife argues that the present location of its claims department is immaterial to where it does business, and that Mr. Bechtol never had an expectation that Florida law would apply. The Court finds that the third factor favors application of Washington law.

The parties dispute whether the fourth factor, the place where the relationship, if any, between the parties is centered, favors application of Washington law. MetLife argues that this factor favors Washington law because Washington state provides the common thread throughout the parties' relationship. Mr. Bechtol originally purchased the policy from Lincoln while a Washington resident, and the policy was delivered to him in Washington. Mr. Bechtol paid premiums in Washington, and was employed in Washington, and was a Washington resident throughout the term of the policy. Plaintiff urges that the most important aspects of the relationship – the investigation and subsequent denial of Mr. Bechtol's claim – occurred in Florida. Plaintiff's argument that his relationship with MetLife "has no connection to Washington except that Mr. Bechtol happened to be living here when he contracted Parkinson's" is not well taken. The fact that Plaintiff happened to be living in Washington when he purchased the policy, canceled the policy, and made a claim under the policy, evidences a strong connection to Washington. The Court concludes that this factor favors application of Washington law because the parties' relationship was centered in Washington, and the Plaintiff's residence is in Washington.

The factors of the Restatement test favor application of Washington law on the issue of punitive damages. The choice to locate a claims department in Florida does not, as an immediate consequence, provide a Washington plaintiff with a right to punitive damages under Florida law. Moreover, application of Washington law in this case would be consistent with the two leading Washington Supreme Court choice-of-law cases. In Kammerer, the Washington Supreme Court applied California law where (1) the injured plaintiffs were California residents, (2) the contract was signed in California, (3) the parties negotiated all of the contract terms in California, (4) the parties agreed that California law would govern the contract, and (5) all royalty payments were to be made in California. Id. at 422-23. Kammerer presents different facts from the case before this Court. The Supreme Court noted that the defendant in Kammerer, a Washington resident, had chosen to go to

ORDER  -5-

California to negotiate the contract, made fraudulent representations in California, and agreed that California law should apply.  The negotiations in this case took place in Washington, and the parties' relationship was centered in Washington.  While it is true that MetLife based its claims department in Florida, as a corporation it is based in New York, and the parties' relationship has been centered in Washington.

The Washington Supreme Court decision in Barr v. Interbay Citizens Bank of Tampa Florida, 96 Wash. 2d 692 (1981), is more closely analogous to the facts of this case.  In Barr, the Washington Supreme Court held that Florida law (and punitive damages) did not apply in a case brought in Washington where:

> Washington is the place where the injury occurred and where plaintiff resided and was domiciled. Florida is the place of incorporation and the principal place of business of defendant as well as the place where the conduct occurred causing the injury.

Id. at 698.  The Court noted other significant contacts with Nevada, but that no party contended Nevada law should apply.  As in this case, the tortious conduct in Barr was alleged to have occurred in Florida, causing injury in Washington.  The Washington resident sought punitive damages under Florida law.  The Supreme Court rejected the Washington resident's request for punitive damages under Florida law, holding that the interest of Florida was subordinate to that of Washington.  Id. at 699.  While the Barr Court acknowledged that Florida had an interest in deterring tortious conduct within its borders, it was persuaded that the acts and conduct in Washington favored application of Washington law and its proscription of punitive damages.

Plaintiff Bechtol argues that the Supreme Court's decision in Johnson v. Spider Staging Corp., 87 Wash. 2d 577 (1976), requires the Court to apply Florida law on punitive damages.  In Johnson, the Washington Supreme Court declined to apply a wrongful death damages limitation under Kansas law in a lawsuit against a Washington corporation.  The Court reasoned that such a limitation had been enacted to protect Kansas residents, and that

ORDER  -6-

Washington's "deterrent policy of full compensation" would be better served by the application of Washington law. The Court noted that:

> When one of two states related to a case has a legitimate interest in the application of its law and the other state has no such interest, clearly the interested state's law should apply.

Id. at 583. Mr. Bechtol urges that this statement means that Florida's interest in deterrence stands against "no interest" by Washington in protecting a nonresident defendant. See Pl.'s Mot. at 8-9. In other words, Mr. Bechtol urges that Washington should always apply punitive damages of another state, where available, against a non-resident defendant. However, this conclusion is untenable in light of Barr. If the Washington Supreme Court were truly ambivalent on the imposition of punitive damages against nonresident defendants, it would have allowed punitive damages in Barr against the nonresident defendant. Instead, the Court found that Washington's interest and policy against punitive damages should control. For the same reasons the Court in Barr concluded that punitive damages were inappropriate, this Court concludes that punitive damages are inappropriate.

Plaintiff Bechtol argues that Judge Coughenour's decision in Specialty Surplus Ins. Co. v. Second Chance, Inc., Civ. No. 03-927JCC (Mar. 8, 2006 Order), provides persuasive authority in favor of punitive damages in this case. In Specialty Surplus, the court resolved the question of punitive damages in an insurance case in favor of New York law, which allows punitive damages, in spite of the fact that the insured was a Washington resident. The harm to the Washington resident occurred in Washington, but the alleged bad faith claims handling occurred exclusively in New York. The insurance company was based in Arizona. Both New York and Arizona permitted punitive damages. Judge Coughenour held that the alleged conduct of the adjusters played a critical role in causing the alleged harm, and therefore the location of that conduct was the most significant contact, outweighing the other contacts. Id. at 4. The conduct complained of occurred entirely in New York, although the injury occurred in Washington. The facts of Specialty Surplus differ substantively from this

ORDER  -7-

case. In Specialty Surplus, the allegedly improper conduct of the adjusters took place exclusively in New York. The actions did not occur, at least in part, in Washington. Accordingly, the court found the New York law on punitive damages should apply. In this case, however, the allegedly improper conduct occurred, at least in part, in Washington. In addition, the parties relationship was centered in Washington over a course of years, involving only contacts with Florida during the handling of Plaintiff's claim, but not during the entirety of the relationship. In contrast to Specialty Surplus, these facts are more analogous to the Washington Supreme Court decision in Barr.

## CONCLUSION

The Court DENIES Plaintiff's Motion re: Choice of Law of Punitive Damages, docket no. 116. Washington state is the state with the most significant relationship on the issue of punitive damages, and Washington law should apply.

IT IS SO ORDERED.

DATED this 24th day of October, 2006.

Thomas S. Zilly
United States District Judge